# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BRIAN LEE THEETGE,**

         **Plaintiff,**

**v.**                                  **Case No: 6:19-cv-111-Orl-LRH**

**COMMISSIONER OF SOCIAL
SECURITY,**

         **Defendant.**

## MEMORANDUM OF DECISION

Brian Lee Theetge ("Claimant") appeals the Commissioner of Social Security's final decision denying his application for disability benefits. (Doc. 1). The Claimant raises several arguments challenging the Commissioner's final decision and, based on those arguments, requests that the matter be reversed and remanded for further proceedings. (Doc. 29 at 18-30, 39-44). The Commissioner argues that the Administrative Law Judge ("ALJ") committed no legal error and that his decision is supported by substantial evidence and should be affirmed. (*Id*. at 30-39, 45). Upon review of the record, the Court finds that the Commissioner's final decision is due to be **REVERSED** and **REMANDED** for further proceedings.

## I.    Procedural History

This case stems from the Claimant's application for disability insurance benefits, in which he alleged a disability onset date of October 15, 2014. (R. 220-21). The Claimant's application was denied on initial review and on reconsideration. The matter then proceeded before an ALJ, who, after holding a hearing (R. 35-68), entered a decision on February 6, 2018 denying the Claimant's application for disability benefits. (R. 19-27). The Claimant requested review of the ALJ's decision,

but the Appeals Council denied his request for review.  (R. 1-3).  This appeal followed.

## II.     The ALJ's Decision

After careful consideration of the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. § 404.1520(a).  (R. 19-27).[1]  The ALJ found that the Claimant met the insured status requirements of the Social Security Act through December 31, 2018.  (R. 21). The ALJ concluded that the Claimant had not engaged in substantial gainful activity from the alleged disability onset date: October 15, 2014.  (*Id.*).  The ALJ found the Claimant's degenerative disc disease was a severe impairment, while his otitis media, depression, and anxiety were non-severe impairments.  (R. 21-23).  The ALJ, however, determined that the Claimant did not have an impairment or combination of impairments that met or medically equaled any listed impairment. (R. 23).

The ALJ next found the Claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b)[2] with the following specific limitations:

> [T]he claimant lifts or carries 20 pounds occasionally and 10 pounds frequently, stands or walks for six of eight hours during the workday, and sits for six of eight hours during the workday.

---

[1] An individual claiming Social Security disability benefits must prove that he or she is disabled.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  The five steps in a disability determination include: (1) whether the claimant is performing substantial, gainful activity; (2) whether the claimant's impairments are severe; (3) whether the severe impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant can return to his or her past relevant work; and (5) based on the claimant's age, education, and work experience, whether he or she could perform other work that exists in the national economy.  *See generally Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520).

[2] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. § 404.1567(b).

(*Id*.). In light of this RFC, the ALJ found that the Claimant is unable to perform his past relevant work. (R. 25). However, the ALJ did find that the Claimant could perform other work in the national economy, including cashier, housekeeper, ticket taker, food and beverage clerk, and addresser. (*Id*. at 25-26). In light of these findings, the ALJ concluded that the Claimant was not disabled between his alleged onset date (October 15, 2014) and the date of the ALJ's decision (February 6, 2018). (*Id*. at 24).

## III. Standard of Review

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm it if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV. Analysis

The Claimant's appeal centers on the ALJ's consideration and weighing of opinions from chiropractor Susan Ville, Dr. Richard Elmore, and physician assistant Amanda Folkers. (Doc. 29

at 18-30).  The Court will begin with the Claimant's argument concerning Dr. Elmore, because it is dispositive of this appeal.

### A.  Dr. Elmore

The Claimant contends that Dr. Elmore – a psychologist – is a treating physician and that the ALJ did not articulate good cause reasons supported by substantial evidence to assign little weight to Dr. Elmore's opinion concerning the Claimant's mental limitations.  (*Id*. at 20-23).

In response, the Commissioner contends that Dr. Elmore is not a treating physician and therefore his opinion was not entitled to any special deference.  (*Id*. at 34).  The Commissioner goes on to argue that the ALJ's reasons for assigning Dr. Elmore's opinion little weight both support that conclusion and are supported by substantial evidence.  (*Id*. at 33-35).  Finally, the Commissioner argues that even if Dr. Elmore's opinion is accepted as an accurate assessment of the Claimant's mental limitations it still does not support a finding of disability because the limitations identified by Dr. Elmore only persisted for three months, which falls below the twelve consecutive month period required for a finding of disability.  (*Id*. at 33).

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238.  The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."  *Lewis*, 125 F.3d at 1440.  In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the medical opinions of treating, examining and non-examining medical sources, as well as the opinions of other sources.  *See* 20 C.F.R. § 404.1545(a)(3); *see also Rosario v. Comm'r of Soc. Sec.*, 490 F. App'x 192, 194 (11th Cir. 2012).

The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length,

nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. § 404.1527(c).

A treating physician's opinion must be given controlling weight, unless good cause is shown to the contrary. 20 C.F.R. § 404.1527(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence); *see also Winschel*, 631 F.3d at 1179. The opinion of an examining physician, on the other hand, is generally not entitled to any special deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (citing *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986)). Similarly, the opinion of a non-examining physician is generally entitled to little weight and, "taken alone, do[es] not constitute substantial evidence." *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985).

Regardless of whether the opinion is from a treating, examining, or non-examining source, the ALJ must state the weight assigned to each medical opinion, and articulate the reasons supporting the weight assigned. *Winschel*, 631 F.3d at 1179. The failure to state the weight with particularity or articulate the reasons in support of the assigned weight prohibits the Court from determining whether the ALJ's ultimate decision is rational and supported by substantial evidence. *Id*.

In November 2015, the Claimant began receiving mental health treatment at "Community Psychological Services" ("CPS")) for "anxiety, depression, fatigue, irritability, feelings of uselessness, inadequacy and hopelessness, as well as sleep related difficulties." (R. 696-704). The Claimant treated at CPS through November 2016, at which time the Claimant informed CPS that he wished to discontinue treatment (which he later explained was due to the financial hardship caused by the cost of his mental health treatment (R. 749)). (R. 705-14). In a letter confirming the

discontinuation of treatment, the therapist noted that the Claimant "made good progress during treatment" and reminded him that if he wished to continue receiving mental health treatment all he needed to do was call and make an appointment. (R. 714).

In April 2017, the Claimant resumed his mental health treatment at CPS due to "irritation with the world, interpersonal difficulties, and feelings of sadness and despair." (R. 749). The clinician who met with the Claimant – Lauren Goworowski – noted that he endorsed frequent suicidal ideation, without plan or intent, exhibited a dysphoric mood, and appeared to have impaired judgment as evidenced by a recent incident where he extracted his own painful tooth with his hands. (R. 753). The Claimant treated with Ms. Goworowski again in June 2017 and July 2017. (R. 718-724, 733-37). Dr. Elmore apparently served as Ms. Goworowski's supervisor during that period, but there is nothing in the record indicating that Dr. Elmore saw or treated the Claimant during that time or at any other time. (*See* R. 718-724, 733-37, 748-56).

In July 2017, Dr. Elmore completed a mental RFC assessment, which covered the time period beginning April 20, 2017 to the present. (R. 715-17).[3] In it, Dr. Elmore opined, among other things, that the Claimant was "seriously limited" in his ability to carry out short, simple instructions, work in coordination with others without being distracted, getting along with co-workers and the general public, setting realistic goals, and dealing with normal work stress. (R. 715-16). Dr. Elmore also opined that the Claimant was "unable to meet competitive standards" for completing a normal workday without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number of breaks, or respond appropriately to changes at work. (R. 715). In light of the Claimant's impairments, Dr. Elmore opined that the Claimant would likely miss more than four days of work per month. (R. 716).

---

[3] The mental RFC assessment was also signed by Ms. Goworowski. (R. 717).

The ALJ considered the Claimant's mental health treatment (R. 22-23), including Dr. Elmore's opinion explaining:

> However, this opinion is contradicted by evidence of the claimant making progress with treatment (Exhibit 19F/1). This opinion is contradicted by the limited testimony regarding mental limitations during the hearing (hearing testimony), and the relatively unremarkable mental status examination in the record (Exhibit 21F/36).

For these reasons, the ALJ assigned Dr. Elmore's opinion little weight. (R. 23).

As an initial matter, the Court must determine whether Dr. Elmore was a treating source, as opposed to a non-examining source as the Commissioner suggests. A treating source is a physician, psychologist, or other acceptable medical source who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant. 20 C.F.R. § 404.1527(a)(2). Such a treatment relationship is established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the treatment or evaluation required for the medical condition. *Id.* There is nothing in the record indicating that Dr. Elmore ever saw or personally treated the Claimant. Instead, it appears that Dr. Elmore's involvement was limited to supervising Ms. Goworowski, who treated the Claimant between April and July 2017. (*See* R. 718, 33). Accordingly, Dr. Elmore is not a treating source, but is a non-examining source whose opinion is not entitled to any special deference. *See, e.g., Gunter v. Astrue*, No. 1:10-CV-967-SRW, 2012 WL 1031437, at *7 n.11 (M.D. Ala. Mar. 27, 2012) (concluding that psychologist who reviewed and approved plaintiff's counselor's intake and annual update assessments and treatment plans was not the plaintiff's treating psychologist because she never personally evaluated the plaintiff).

Even though Dr. Elmore's opinion is not entitled to special deference, the ALJ was still required to articulate reasons in support of his decision to assign Dr. Elmore's opinion little weight. *Winschel*, 631 F.3d at 1179. The ALJ did just that, but the ALJ's reasons are either too conclusory

to determine whether they support the ALJ's conclusion or they are not supported by substantial evidence.

With respect to the ALJ's first reason – the Claimant's progress with treatment – the ALJ's focus on the November 2016 letter (R. 714) overlooks the fact that the Claimant continued treating at CPS in April 2017 and that Dr. Elmore's opinion only addressed the Claimant's limitations from April 2017 on forward (R. 715-17). Hence, even if the Claimant had made progress as of November 2016, Dr. Elmore opined that the Claimant had several severe mental limitations after that period. Accordingly, the Court finds the ALJ's first reason is not supported by substantial evidence.

The ALJ's second reason – that Claimant's testimony contradicted Dr. Elmore's opinion – is also not supported by substantial evidence. To begin, the ALJ does not identify the testimony that contradicts Dr. Elmore's opinion. This is perhaps so because there was practically no testimony from the Claimant about his mental impairments or limitations. (*See* R. 35-68). Given the dearth of such testimony, it is unclear how the ALJ found that the Claimant's testimony contradicted Dr. Elmore's opinion. Accordingly, the Court does not find that the ALJ's second reason is supported by substantial evidence.

Finally, the ALJ's third reason– that Claimant's mental status examination contradicted Dr. Elmore's opinion – is too conclusory to determine whether it supports the weight assigned to Dr. Elmore's opinion. The ALJ simply states that the Claimant's "relatively unremarkable mental status examination" from April 2017 contradicts Dr. Elmore's opinion. (R. 23). Although there were unremarkable aspects of that examination, the examination also revealed that the Claimant endorsed frequent suicidal ideation, without plan or intent, exhibited a dysphoric mood, and appeared to have impaired judgment. (R. 753). The ALJ does not explain how these observations are inconsistent with Dr. Elmore's opinion. Accordingly, the Court cannot meaningfully determine whether the

ALJ's third reason supports the weight assigned to Dr. Elmore's opinion. *See Paltan v. Comm'r of Soc. Sec.*, Case No. 6:07-cv-932-Orl-19DAB, 2008 WL 1848342, at *5 (M.D. Fla. Apr. 22, 2008); ("The ALJ's failure to explain how [the treating physician's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required."); *see also Gooding v. Comm'r of Soc. Sec.*, No. 6:18-cv-348-Orl-37LRH, 2019 WL 2142952, at *7 (M.D. Fla. May 1, 2019) (finding decision to reject treating physician opinion was not supported by substantial evidence where the ALJ made a broad statement that the claimant's "rather conservative care with normal physical exam findings . . . more appropriately supports light exertional work," without further explanation or citation to any specific evidence in support) *report and recommendation adopted*, 2019 WL 2137414 (M.D. Fla. May 16, 2019).

In summary, the Court finds the weight assigned to Dr. Elmore's opinion is not supported by substantial evidence. This determination, however, does not end the Court's inquiry, because the Commissioner contends that even if the ALJ accepted Dr. Elmore's opinion as an accurate assessment of the Claimant's mental limitations it still does not support a finding of disability because the limitations identified by Dr. Elmore only persisted for four months (between April 2017 and July 2017), which falls below the twelve-consecutive-month period required for a finding of disability. (Doc. 29 at 33); *see* 20 C.F.R. § 404.1505(a) ("The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."). In support, the Commissioner points to the following language from the form containing Dr. Elmore's opinion:

> For the time period beginning 4/20/17 and continuing to present, to determine your patient's ability to do work-related activities on a day-to-day basis in a regular work setting, please give us your opinion based on your examination of how you patient's mental/emotional capabilities are affected by the impairment(s).

(Doc. 29 at 33 (citing R. 715)).  The Commissioner interprets this as limiting the duration of the Claimants' mental limitations to April 2017 through July 2017.  (*Id*.).  The Commissioner also contends that the absence of an opinion that the limitations continued past July 2017 further supports his interpretation that the limitations only existed between April 2017 and July 2017.  (*Id*.).

The Commissioner's argument is unpersuasive for two principle reasons.  First, the Commissioner has not pointed to any authority supporting his interpretation of Dr. Elmore's opinion, or the need for a medical source to expressly opine that the limitations identified in the opinion will persist beyond the date of the opinion.  (*See id*.).  The lack of such authority undermines the Commissioner's interpretation.  Second, the Court does not read Dr. Elmore's opinion as limiting the Claimant's mental limitations to a four-month period.  Instead, it appears that Dr. Elmore is simply stating that his opinions are based on evidence dated between April 2017 and July 2017 (the date the opinion was authored).  The Court therefore does not see (nor did the ALJ[4]) that Dr. Elmore opined that the Claimant's severe mental limitations only existed for four months in 2017.

For the reasons discussed above, the Court finds that the ALJ erred when weighing Dr. Elmore's opinion and, as a result, the case will be reversed and remanded for further proceedings.

### B.  Chiropractor Susan Ville & Physician Assistant Amanda Folkers

The Claimant also contends that the ALJ erred by not weighing Chiropractor Ville's opinion (R. 420) and by assigning Physician Assistant Folkers' opinion (R. 790) little weight.  (Doc. 29 at 19-20, 23-30).  The Court declines to rule on these arguments because its ruling with respect to Dr.

---

[4] The fact that the ALJ did not raise the temporal scope of Dr. Elmore's opinion as one of the reasons to discredit his opinion is significant because the Court is not permitted to consider the Commissioner's *post hoc* rationalization to support the ALJ's decision.  *See Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (A court will not affirm based on a post hoc rationale that "might have supported the ALJ's conclusion.") (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).

Elmore is dispositive of this appeal.  *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (no need to analyze other issues when case must be reversed due to other dispositive errors).  On remand, the ALJ should expressly consider and weigh Chiropractor Ville's opinion and provide more detail in support of the weight assigned to Physician Assistant Folkers' opinion.

## V.      Conclusion

Accordingly, it is **ORDERED** that:

1.    The Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk is **DIRECTED** to enter judgment in favor of the Claimant and against the Commissioner, and to close the case.

**DONE** and **ORDERED** in Orlando, Florida on March 3, 2020.

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Paul R. Armstrong
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA Oho NHC.

15 Floor
200 West Adams St.
Chicago, IL 60606-5208